BALFOUR, GUTHRIE & CO. *v.* UNITED STATES (No. 2131).[1]

1. CONSTRUCTION, PARAGRAPH 644, TARIFF ACT OF 1913—COUNTERVAILING DUTY ON WHEAT AND ITS PRODUCTS.

Paragraph 644, tariff act of 1913, admits wheat and its products free of duty, but levies duty upon them if imported from a jurisdiction "which imposes a duty on wheat or wheat flour or semolina imported from the United States." This does not mean that wheat or any one of its products is free here if free there; but means what it says—viz, that wheat or any of its products is dutiable here if wheat, wheat flour, *or* semolina is dutiable there. Consequently wheat imported from a jurisdiction which admits our wheat free of duty but levies duty on our wheat flour or semolina is dutiable under the paragraph.

2. RETROACTIVE FEATURE OF FOREIGN TARIFF LAW DOES NOT RENDER RETRO-ACTIVE THE COUNTERVAILING DUTY PROVISION OF PARAGRAPH 644, TARIFF ACT OF 1913.

Paragraph 644, tariff act of 1913, admits wheat and its products free of duty with a countervailing duty proviso. Wheat entered here from Australia at a time when it was dutiable under the proviso is not rendered free of duty by the subsequent passage of an Australian statute meeting the proviso and retroactive past the date of the importation.

United States Court of Customs Appeals, March 31, 1922.

APPEAL from Board of United States General Appraisers, Abstract 44351.

[Affirmed.]

*Frank L. Lawrence* (*Martin T. Baldwin* and *Thomas M. Lane* of counsel) for appellants. *William W. Hoppin*, Assistant Attorney General (*John J. Mulvaney* and *Harry M. Farrell*, special attorneys, of counsel), for the United States.

[Oral argument February 17, 1922, by Mr. Lane and Mr. Farrell.]

Before SMITH, BARBER, and MARTIN, Associate Judges; DE VRIES, Presiding Judge, participating in the decision by agreement of counsel.

BARBER, Judge, delivered the opinion of the court:

The undisputed facts of this case are as follows:

A consignment of over 78,000 bushels of wheat produced there was imported from Australia and entered at the port of San Fran-

---

cisco by the appellants August 24, 1917. On the following day the estimated duties were paid. Final liquidation was not had until November 20 following, at which time a duty of 10 cents per bushel was assessed under paragraph 644 of the tariff act of 1913, which we quote:

Wheat, wheat flour, semolina, and other wheat products, not specially provided for in this section: *Provided*, That wheat shall be subject to a duty of 10 cents per bushel, that wheat flour shall be subject to a duty of 45 cents per barrel of 196 pounds, and semolina and other products of wheat, not specially provided for in this section, 10 per cent ad valorem when imported directly or indirectly from a country, dependency, or other subdivision of Government which imposes a duty on wheat or wheat flour or semolina imported from the United States.

The importers protested, incorporating in the protest the following claim:

The wheat imported from Australia, described in the entry specified below, on which you charged us duty at the rate of 10¢ per bushel under the proviso in par 644, is entitled to free entry as the Amendment to the Tariff of the Commonwealth of Australia, providing for the Free Entry of wheat imported into that country went into force August 10, 1917, thirteen days before the importation into the United States of the wheat in question.

In connection with this claim it is agreed that at the time of importation under the law of Australia wheat imported thereinto from the United States was entitled to free entry, but that wheaten flour and grain prepared or manufactured, "not elsewhere included" (which quoted expression means, as we understand, about the same as "not specially provided for" in our tariff laws), including phosphorized wheat, were dutiable; that on the 26th day of September, 1917, the law of Australia was so amended that the then existing provision for free entry of wheat was extended to include wheaten flour and semolina, while grains prepared or manufactured and phosphorized wheat still remained dutiable, and that this change in the Australian law giving free entry to wheaten flour and semolina was made retroactive to take effect as of August 10, 1917, which retroactive effect was lawful in Australia.

It is also agreed "that in accordance with the provisions of said amendments, if any wheat or wheat flour or semolina had been imported into Australia from the United States between August 10 and September 26, 1917, and a customs duty had been imposed thereon by the Australian government, such duty would have been remitted, or refunded if paid."

Upon these facts the Board of General Appraisers overruled the protest and importers appealed.

On their behalf it is claimed that the provisions of paragraph 644 "should be read distributively and so construed as to provide a countervailing duty on wheat only when the exporting country makes American wheat dutiable, and a duty on wheat flour only when such

country makes American flour dutiable," and so on as to the other articles named in paragraph 644.

Of course, if that contention be upheld it ends the case here in favor of the importers, because at the time of the importation in question here wheat was entitled to free entry in Australia.

While importers' counsel makes the foregoing claim in his brief, no argument or authority is presented to support the same. No sufficient reason for sustaining it is apparent to us.

Paragraph 644 provides that wheat, wheat flour, semolina, and other products of wheat, not specially provided for, shall be dutiable when imported directly or indirectly from a country which imposes a duty "on wheat or wheat flour or semolina imported from the United States."

The phraseology of the paragraph does not support the contention. There is nothing therein to warrant the view that Congress intended to subject wheat to a duty here only when a duty was imposed in the country of its production upon wheat thereinto imported from the United States. The provision is a collective one and not distributive, as it clearly provides that the duty shall be assessed on the named "and other wheat products" imported here in the event that wheat or wheat flour or semolina is dutiable in the producing country. That is, the imposition of duty in the foreign country upon one of the articles, wheat, wheat flour, or semolina, at once brings into operation the countervailing duty provision of the paragraph.

We agree with the Board of General Appraisers that this claim is without merit, and pass to the contention which is more forcibly urged by importers' counsel, that by virtue of the retroactive effect of the change in the Australian tariff law this importation of wheat, although dutiable at the time of entry and when the estimated duties were paid, became entitled to free entry before the date of final liquidation solely because in the interim the lawmaking department of Australia saw fit to change its tariff law and give the same a retroactive effect.

Without entering into any elaborate discussion of the question, we are of opinion that this view ought not to be upheld.

Obviously the countervailing provisions of paragraph 644 relate to the state of the law in the foreign country of production at the time of importation here of the named merchandise therefrom. In substance this provision is that wheat and the other named products may be imported free of duty into this country if the country in which they are produced and from which they are directly or indirectly imported allows like free entry of wheat and its products if thereinto imported from the United States; but if such entry is not allowed in the foreign country a duty is imposed here on the importations therefrom.

One manifest purpose of paragraph 644 was to invite other countries to repeal their respective laws taxing wheat and its products thereinto imported from this country and to promote the acceptance of the invitation by the imposition of duties on wheat and its products imported here from such other countries. So far as Australia is concerned, this purpose has apparently been accomplished. It rested with that country to accept the invitation and enjoy the benefits accruing therefrom whenever it saw fit, but there is no provision in our law which allows Australia to antedate its acceptance and thereby become entitled to enjoy retrospective benefits here.

The agreed fact that, in accordance with the provisions of its retroactive amendment, Australia would remit if unpaid, or would refund if paid, duties on wheat and the other named products, if any, thereinto imported from this country between August 10 and September 27, 1917, makes no difference. That is purely a matter of domestic policy, and imposes no corresponding obligations upon this Government. There is, however, nothing to show that any importations of the kind suggested were made, and it is quite clear that the natural effect of the Australian law, prior to its amendment, would be to discourage the export of wheat products, not natural wheat, from this to that country.

If, as the appellants contend, "the board's decision leaves to the Australian importer the full benefit of the retroactive statute, but denies it to the American importer," thereby resulting in unfair discrimination against the latter, we think the answer is that Australia is the place to seek relief from the injurious effects of its retroactive statutes, if any there be. At any rate, the customs authorities and the courts here are powerless to grant relief unless our statutes so authorize.

The tariff taxes imposed by our law attach immediately upon entry of the merchandise here to be finally liquidated and collected in due course, and this liability can not be discharged or affected by foreign retroactive legislation.

If the principle of importers' contention be admitted, when would the effective retroactive period end? Might it not as well be one year or more as one month? Would it not be equally applicable to merchandise the duty upon which had been finally liquidated and paid here without protest prior to the enactment there of the retroactive statute?

Again, as the Government suggests, suppose that at the date of the importation here Australia had imposed no duty upon wheat or wheat products, and that afterwards it had enacted a law retroactively imposing such duty, could it be successfully contended that thereby merchandise imported here became subsequently chargeable with a duty

although at the time of importation it was entitled to and was allowed free entry; and if so, for how long a time would such liability attach?

We think the fallacy of importers' contention is that it ignores the fact that the dutiability of imported merchandise must be determined as of the time of its importation, just as under long-settled law and practice its then condition determines its classification.

Other countries possess no power to change the status of merchandise after it has been imported here, but may, in instances of which paragraph 644 is an illustration, so legislate as to affect importations *thereafter* made.

Importers cite no authority to support their contention, and we know of none.

The case of United States v. Laurentide Paper Co. (5 Ct. Cust. Appls. 519; T. D. 35157) while not entirely analogous, nevertheless somewhat indicates the views of this court upon the principle really invoked by the importers here.

The judgment of the Board of General Appraisers is *affirmed*.